CHIEF JUSTICE GRAY,
dissenting.
¶16 I respectfully dissent from the Court’s opinion. I have no quarrel with the Court’s quotes from Simmons and Fergunson. It is my view, however, that neither case supports the Court’s action here.
¶17 The present case involves a Montana driver arrested for DUI, advised of the ramifications to a nonresident driver upon refusal to submit to a breath test and advised he could obtain an independent test as well. Anderson also was advised that he could contest any *118 action taken against his driver’s license. Anderson refused the test, and later challenged the seizure of his driver’s license via a petition to reinstate.
¶18 In Simmons, the arrestee was a nonresident driver who was advised his license would be seized and suspended for six months upon refusal to take the test. Stated differently, he was given the so-called “Montana resident” form of the implied consent advisory. He submitted to the test and later-during the proceedings on his DUI charge-moved the district court to suppress the test results on the basis he was given erroneous and misleading information about the ramifications of taking or refusing the test. These facts bear no resemblance to those in the present case. We concluded in Simmons that the arrestee was provided with “sufficiently accurate information as to the ramifications of a refusal to submit to testing[,]” because the information he was given was technically correct.
¶19 The facts in Fergunson were much like those in Simmons: nonresident driver, given the advisory about the consequences of failing to take the test, submitted to the test and moved to suppress the test results during the DUI proceeding. The only significant factual difference between Simmons and Fergunson is that, in the latter case, the nonresident driver was given both the resident and nonresident advisories. Fergunson, ¶ 3. Again, very different facts from those presently before us. We concluded, relying heavily on Simmons, that the arrestee was “put ... on notice of the potentially serious consequences of refusing a blood alcohol test.” Fergunson, ¶ 11.
¶20 I realize, of course, that the Court relies on these cases for the law and not for the facts. In my opinion, the law does not support the Court either. It is true, as quoted from Simmons, that the implied consent statutes do not specifically require notice to an arrested motorist about the ramifications of refusal to take the requested test. It is equally true, however, that our long-standing jurisprudence, including Simmons and Fergunson, states that the purpose of the advisory is to inform “an apparently intoxicated driver of the potentially serious consequences of refusing to submit to a blood alcohol test.” Simmons, ¶ 17.
¶21 In the present case, Anderson was not informed that his Montana driver’s license would be seized and suspended. Thus, he was not informed of the potentially serious consequences of refusing the test. Informing an apparently impaired driver that he could contest “any action taken” against his license if he refused the test is not at all-at least to me-equivalent to informing him of what kind of action would *119 be taken upon refusal. The “potentially serious consequenceD of refusing the test” is the seizure and suspension of the driver’s license. While the Court apparently thinks advice that Anderson could contest “any action” is “an obvious indication” that there could be consequences if he refused, I am not persuaded that a driver supposedly impaired by alcohol who is stopped after leaving a bar and traveling some distance in his vehicle without headlights at 1:55 a.m., would think the indication was so obvious. Nor am I convinced that advising there “could” be consequences — when the law requires seizure and suspension of the driver’s license-is sufficient.
¶22 I dissent from the Court’s opinion. I would reverse the District Court.